[Cite as *Toledo v. Whiting*, 2019-Ohio-56.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

    Appellee

v.

Douglas M. Whiting

    Appellant

Court of Appeals Nos. L-17-1133
L-17-1247

Trial Court Nos. CRB-16-12961
CRB-16-16907

**DECISION AND JUDGMENT**

Decided: January 11, 2019

* * * * *

David Toska, Chief Prosecutor, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**MAYLE, P.J.**

**{¶ 1}** In this consolidated appeal, defendant-appellant, Douglas Whiting, appeals

the July 13, 2017 judgment of the Toledo Municipal Court sentencing him for a

conviction of obstructing official business and the September 7, 2017 judgment of the

Toledo Municipal Court sentencing him for convictions of zoning violations. For the following reasons, we affirm, in part, and reverse, in part.

## I. Background and Facts

{¶ 2} The cases underlying this appeal stem from zoning violations on Whiting's property, which is located in Washington Township.[1] In the first case (the "zoning case"), the township charged Whiting with two violations of the township's zoning resolution, both unclassified misdemeanors, due to blight and nonconforming signs on his property. In the second case (the "obstructing case"), Whiting was arrested and charged with obstructing official business, a second-degree misdemeanor, because of his behavior while the township was abating the zoning violations on his property.

## A. The Zoning Case

{¶ 3} The zoning case arose from complaints about a sign in Whiting's yard that did not conform to the township's zoning resolution.

{¶ 4} At the bench trial, held November 15, 2016, photographs of Whiting's property, taken by Christopher Kaiser, chief of the Washington Township Police Department ("WTPD"), were properly authenticated and offered into evidence. Chief Kaiser testified that he took some of the photographs on October 11, 2016, and that he took some of the photographs on the morning of trial.

---

[1] Washington Township is represented on appeal by appellee, state of Ohio/city of Toledo. For clarity, we will refer to appellee as "the township."

2.

**{¶ 5}** Becky Bodette, the township's zoning inspector, testified that she investigated Whiting's property in June 2016 after her office had received "numerous" complaints about Whiting's property, including a complaint that Whiting had a nonconforming sign in his yard. When she visited the property, she discovered numerous zoning violations, including "out of control vegetation in the back yard," "storage of automobile parts," "storage and accumulation of junk," and "trash and rubbish." During her testimony, Bodette referred to the recent photographs of Whiting's property that were taken by Chief Kaiser, and she said that the condition of the property was now worse than it was when she visited the property in June 2016. For example, in addition to the signs and debris that Bodette saw in June, the house now had words spray painted on the roof and exterior walls.

**{¶ 6}** Bodette issued zoning violation notices to Whiting on June 9 and June 22, 2016. The June 9 notice informed Whiting that his property was "IN VIOLATION OF THE WASHINGTON TOWNSHIP ZONING RESOLUTION SECTION 15 SIGNS AND OUTDOOR ADVERTISING [sic]," and included portions of section 15 of the township's zoning resolution. The June 22 notice informed Whiting that his property was "IN VIOLATION OF THE WASHINGTON TOWNSHIP ZONING RESOLUTION SECTION 1308 CAUSES OF BLIGHT OR BLIGHTING FACTORS [sic]," and had a handwritten note at the bottom that read, "Also attached storage regulalions [sic]." Section 1308 and portions of section 1320 of the township's zoning resolution (relating to parking and storage of "watercraft, recreational vehicles and utility equipment") were

3.

attached to the June 22 notice. Both notices told Whiting the timeframe in which he was required to correct the violations, the consequences of failing to correct the violations, and his right to file appeals of the notices. Bodette testified that Whiting neither brought his property into compliance with the zoning resolution nor filed administrative appeals of the violation notices.

{¶ 7} When questioned by Whiting (who was acting pro se) about the overgrown weeds, Bodette said that she was unable to tell whether the weeds originated in Whiting's yard or his neighbor's yard, but that his yard certainly contained overgrown weeds. Bodette also conceded that Whiting had submitted an application to place a sign in his yard, but said that he did not include with it the proper documentation and measurements.

{¶ 8} Whiting testified in his own behalf, but did not present any other witnesses because he claimed that he did not know that he could present witnesses at the trial. Relating to the violations, Whiting said that two of the signs in his yard had been there for two years without the zoning department investigating them. He claimed that he had read the zoning resolution and attempted to comply with it by converting the signs to for-sale signs and moving them closer to the house. He filed an application relating to the signs with the zoning department, even though someone (presumably Bodette) told him before he ever filed it that she would deny it, which is what happened. He explained that he has an upside-down American flag hanging on the front of his house because it shows "extreme danger to your property or life" and he felt that his property was in danger. He also said that one of the vehicles that the township claimed was a junk vehicle had a 2017

4.

registration sticker and insurance. He claimed that he parked a truck in the front yard because the township said that he could not park it in the back yard.

{¶ 9} The trial court eventually stopped Whiting's testimony because he repeatedly made statements that were irrelevant and beyond the scope of the zoning violations, and Whiting was removed from the courtroom for interrupting the proceedings.

{¶ 10} After hearing the testimony, the trial court found that Whiting had "committed the crimes that are involved" and found him guilty. The court ordered Whiting to "remediate the property, bring it into compliance * * *" with the zoning resolution by November 30, 2016, or the township would be allowed to bring the property into compliance. Whiting responded, "That's not going to happen, sir."

{¶ 11} When Whiting returned to court on November 30, the township told the court that Whiting had not remedied the zoning violations, which Whiting confirmed by saying "It got worse." The judge had Whiting removed from the courtroom for interrupting before the township discussed its plans for the property. After Whiting was removed, the prosecutor asked the court to authorize the township to remediate any code violations on Whiting's property. He told the court that the township would need to sandblast the bricks on the house, remove spray paint from the shingles, and remove "[v]ehicles and objects." He also noted that he was "sure that there will be costs eventually assessed against the defendant for that work." The court granted the township's request and ordered Whiting not to interfere with the remediation efforts, but

5.

did not address the issue of remediation costs. The trial court's journal entry from November 30 stated that the township was "authorized to remediate the property," but did not specify the work the township could do or any personal property it could remove. The township completed its clean-up of Whiting's property on December 7, 2016.

{¶ 12} On January 6, 2017, the trial court sentenced Whiting in the zoning case. It ordered Whiting not to repost the signs and graffiti that the township removed from his property, imposed and suspended a $100 fine and court costs for each charge, and ordered Whiting to "reimburse the Township for the costs they incurred in removing the graffiti and postings on the property." Even though the township completed work on Whiting's property a month before the sentencing hearing, it did not put the cost of the clean-up on the record. Nor did the trial court specify the amount that Whiting owed to the township. Instead, the court told Whiting that "[h]e will be receiving a statement from the Township regarding what their cost was * * * and you will be ordered to pay that."

{¶ 13} Months later, on May 30, 2017, the township filed a motion requesting reimbursement of $13,866.73 for the costs of the clean-up. The total included hiring contractors to remove the spray-painted graffiti from the house, landfill fees, towing charges, storage fees, and the cost of township road department and police department employee labor. The next day, Whiting filed a notice of appeal.

{¶ 14} On June 7, 2017, while Whiting's appeal to this court was pending, the trial court filed its sentencing entry, which imposed and suspended a $100 fine for each

6.

zoning violation. As to the violation of section 1308 only, the court also ordered Whiting not to repost the graffiti on his property and to reimburse the township "for the cost of removing the graffiti from his property * * *," but did not specify the amount of the reimbursement. The same day, the court signed a separate entry granting the township's motion for reimbursement and ordering Whiting to reimburse the township $13,866.73 for "the costs incurred by Washington Township during the process of removing graffiti from the property * * *."

{¶ 15} We remanded the case to the trial court for it to file a judgment entry that complied with Crim.R. 32(C). The trial court did so on September 7, 2017. The corrected sentencing entry imposed and suspended a $100 fine for each zoning violation. As to the violation of section 1308 only, the court also ordered Whiting not to repost the graffiti on his property and to reimburse the township $13,866.73 for the costs it incurred in removing the graffiti from his property.

### B. The Obstructing Case

{¶ 16} On December 7, 2016, during the course of the clean-up, WTPD arrested Whiting for obstructing official business. On July 13, 2017, the trial court held a jury trial on the obstructing charge. At the trial, the township presented the testimony of Chief Kaiser of the WTPD and Deputy Jason Wilbarger of the Lucas County Sheriff's Office. It also entered into evidence the video from the body camera that Chief Kaiser wore during the clean-up.

7.

{¶ 17} Chief Kaiser testified that he, two WTPD officers, and several sheriff's deputies accompanied employees of the township's road department and maintenance crew to Whiting's home on December 7 to ensure that things went smoothly while township employees cleaned up the property. Wilbarger confirmed that the deputies were present to "keep the peace" during the clean-up.

{¶ 18} Chief Kaiser said that the clean-up was required because Whiting had been found guilty of zoning violations but failed to follow the trial court's order to remediate the property. When asked about the appearance of Whiting's property, Chief Kaiser described "a brick home with a lot of what appears to be spray paint with names on it. Spray paint on the roof. Graffiti type lettering. A lot of vulgarity. Some names on there. Some signs, lights. A lot of debris in the yard." He said that by the time the clean-up was finished, the township had removed debris and junk, as well as "a vehicle. Several boats, several trailers, cement mixer, ATV, motorcycles; two or three motorcycles, jet ski, snow mobile [sic]."

{¶ 19} When Chief Kaiser arrived for the clean-up, he found Whiting standing in the front yard with two dogs. Chief Kaiser explained to Whiting that township employees were coming to clean up the property. He made clear to Whiting before any work began that the officers and workers "just don't want [Whiting] to interfere with our clean-up process." Whiting initially appeared to cooperate with the clean-up process; Chief Kaiser described Whiting as "happy [and] jovial," Whiting told the officers that he

8.

had purchased doughnuts for them, and Whiting put away his dogs and moved a truck out of his driveway at Chief Kaiser's request.

{¶ 20} Whiting's attitude changed once the workers began the clean-up, however. Whiting told workers not to take certain items and interfered with the clean-up by talking to workers and taking items out of township vehicles. Chief Kaiser said that Whiting sought to keep "every item that we would go after." Wilbarger confirmed that Whiting was "real vocal" during the clean-up and was in and out of the work area trying to get items that the workers were attempting to remove. The video showed that the items Whiting sought to rescue included his "crooked cane," "a mop handle that I walk with," firewood, and hard hats that seemed to be part of a memorial to his deceased coworkers. While Whiting attempted to take items from the yard, Chief Kaiser repeatedly told Whiting to leave items where they were and leave the workers alone. Chief Kaiser believed that he warned Whiting from five to 10 times to stay away from the workers and let them do their jobs.

{¶ 21} According to Chief Kaiser, he arrested Whiting after Whiting grabbed the handlebars of an ATV and tried to move it from the front yard to the back yard so that workers would not take it. Chief Kaiser told Whiting to leave the ATV where it was, but Whiting continued trying to move it. When Whiting persisted in asking if he could move the ATV, Chief Kaiser arrested him.

{¶ 22} Whiting's cross-examination of Chief Kaiser focused on the workers' authority to clean Whiting's property. When asked about the court order authorizing the

9.

work, Chief Kaiser said that he did not see a court order related to remediation, but he remembered the trial judge in the zoning case saying that the township was ordered to clean up the property. Likewise, Wilbarger said that he did not see a court order before going to Whiting's home; instead, he said that the deputies were called to the chambers of the trial judge in the zoning case and told to go to Whiting's house to make sure that he did not interfere with the clean-up. Chief Kaiser did not recall Whiting asking to see a court order before the crew began working or recall giving Whiting a court order. However, the video showed Whiting asking for "a piece of paper" while Chief Kaiser was talking to him about the workers' purpose that day. One of the other officers can be heard in the background telling Whiting that he had the order from the trial court judge on his phone. Whiting interrupted the officer and began talking about an unrelated subject without looking at the officer's phone or repeating his request to see a court order.

{¶ 23} Following the township's case, Whiting testified in his own behalf. He said that he was not trying to stall the workers' progress by trying to retrieve items that they were picking up. Rather, he was attempting to take items that "mean a lot" to him into the house so that they would not be thrown away.

{¶ 24} Based on the evidence presented, the jury found Whiting guilty of obstructing official business, and the court sentenced him to 90 days in jail.

## C. The Appeals

{¶ 25} Whiting appeals the trial court's judgments in both cases. In the zoning case, he raises three assignments of error:

I. The trial court committed reversible error when it ordered appellant to reimburse Washington Township for the cost of removing graffiti from his property at a cost of $13,866.73 without a hearing, and when the requested restitution includes labor costs of township employees.

II. The convictions for violations of the ordinance were based on insufficient evidence, because the record does not include references to specific violations of Sections 1308 or 1320 of the Zoning Resolution.

III. The convictions for violations of the ordinance were against the manifest weight of the evidence because the record does not include references to specific violations of Sections 1308 or 1320 of the Zoning Resolution.

{¶ 26} In the obstructing case, Whiting raises two assignments of error.

I. Appellant's conviction for obstructing official business was against the manifest weight of the evidence.

II. The court abused its discretion by ordering the remediation to include the removal of functional and properly licensed personal property, which was not debris and had significant monetary value.

## II. Law and Analysis

## A. The Zoning Case

{¶ 27} In his appeal from the zoning convictions, Whiting argues that the trial court erred by ordering him to reimburse the township for the costs of the clean-up and that the blight conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. We address his arguments out of order.

### 1. Whiting's Blight Conviction is Supported by Sufficient Evidence

{¶ 28} In his second assignment of error in the zoning case, Whiting argues that his conviction for violating section 1308 of the township's zoning resolution—relating to "causes of blight or blighting factors"—is not supported by sufficient evidence. He argues that the evidence is insufficient because Bodette's trial testimony only included "generalized references" to blighting factors and she did not discuss what was in the photographs that she referred to or describe how the photographs depicted violations of section 1308.[2] The township counters that the evidence it presented at trial was sufficient to allow a reasonable fact-finder to conclude that Whiting violated the provisions of section 1308 relating to noxious vegetation; storage and accumulation of junk, trash, and rubbish; and outdoor storage of building materials.

---

[2] Whiting also argues that there is insufficient evidence to support his conviction for violating section 1320 of the zoning resolution. Although the June 22, 2016 zoning violation notice included a handwritten notation about storage regulations and included portions of section 1320, Whiting was not charged with or convicted of violating section 1320. Accordingly, we will not discuss Whiting's arguments relating to section 1320.

12.

**{¶ 29}** In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, we will not weigh the evidence or assess the credibility of the witnesses. *State v. Were,* 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶ 30}** Section 1308 of the township's zoning resolution provides, in relevant part:

the following uses, structures and activities are causes of blight or blighting factors which, if allowed to exist, will tend to result in blighted and undesirable neighborhoods. No person * * * shall maintain or permit to be maintained any of these causes of blight and blighting factors upon any premises in Washington Township owned, leased, or occupied by such persons [sic] * * *.

* * *

**C.** The outdoor storage upon any premises of building materials unless a building permit has been issued * * * and said materials are for use in connection with such construction. Building materials shall include, but shall not be limited to, lumber, bricks, concrete or cinder blocks, plumbing

materials, electrical wiring or equipment, heating ducts, or equipment, shingles, mortar, concrete or cement, nails, screws, or any other materials used in construction and structure.  Provided, that outdoor storage of building materials which is not in violation of applicable zoning or safety regulations is permitted if said materials are kept out of view of the public and abutting premises.  * * *.

**D.** The storage or accumulation of junk, trash, rubbish or refuse of any kind.  The term "junk" shall include parts of machinery or motor vehicles, unused stoves or other appliances stored in the open, remnants of wood, metal or any other materials or other castoff materials of any kind whether or not same could be put to any reasonable use.  Domestic refuse shall be stored in cans with lids and shall not be placed or located in the front yard.

* * *

**H.** Areas which have grass, groundcover plantings, shrubs, trees that are not kept in a healthy, neatly trimmed condition or woodpiles, skids or other burnable materials that harbor rodents, or other animal or insect infestation.  * * *.

**I.** Firewood and other solid heating fuels when not stacked or piled in a reasonably compact and orderly fashion in the rear yard.  * * *.

**J.** Building exteriors must be kept in good condition with no

partially completed siding or painted walls.  * * *.

* * *

**Q.** * * *.  No lot owner shall permit any sign to exist on a lot that

does not conform to the requirements of this Section and Section 15, any

such sign is hereby declared to be a nuisance [sic].  * * *.

So, to prove that Whiting committed a violation of section 1308, the township was

required to prove that Whiting allowed at least one of the listed causes of blight to exist

on a premises that Whiting owned, leased, or occupied and that was located in

Washington Township.

{¶ 31} At trial, the township introduced a property record from the Lucas County

Auditor showing that a person named Douglas Whiting owned the property in question,

which was located in Washington Township.  Bodette identified Whiting as the Douglas

Whiting in the property record.  She also testified that the pictures the township offered

as exhibits showed "junk and debris and the signage" and "blighting on the outside of the

home," which consisted of spray paint on the house's exterior walls and roof.

{¶ 32} The pictures confirmed Bodette's testimony.  Specifically, the pictures

showed (1) pieces of wood, bricks, and cinderblocks on the ground in Whiting's front and

back yards; (2) some rubbish (for example, a soda can and what appear to be wads of

paper) in the yard; (3) a garbage can with rubbish visible in it sitting in the front yard;

(4) weeds nearly as tall as the fence post in the front yard and unruly weeds or vines in

15.

the back yard; and (5) spray-painted words and phrases on three of the house's exterior walls and both sides of the roof. This evidence is sufficient to allow a rational trier-of-fact to conclude beyond a reasonable doubt that Whiting allowed blight (as defined by the township's zoning resolution) to exist on property that he owned in Washington Township.

{¶ 33} Further, we find Whiting's argument that the photographs were somehow incompetent evidence because Bodette did not describe their contents without merit. "Evidence" consists of the testimony of witness and the exhibits admitted at trial. *State v. Siller*, 8th Dist. Cuyahoga No. 90865, 2009-Ohio-2874, ¶ 58, citing *Ohio Jury Instructions*, CR Section 409.01 (Rev. 2009). The photographs were properly authenticated and admitted—making them evidence—so the court properly considered them in reaching its decision in the zoning case. There is no requirement that a witness provide a detailed description of the contents of an exhibit before the trier-of-fact can rely on the exhibit in reaching its verdict.

{¶ 34} Because the township presented sufficient evidence to show that Whiting allowed blight to exist on his property, we find that Whiting's second assignment of error in the zoning case is not well-taken.

16.

**2. Whiting's Blight Conviction is not Against the Manifest Weight of the Evidence**

{¶ 35} Whiting argues in his third assignment of error that his blight conviction is against the manifest weight of the evidence because, he claims, the record lacks "specific references * * * to the alleged violations of the ordinance(s) * * *."[3] The township contends that the evidence at trial supported Whiting's convictions and that no miscarriage of justice occurred.

{¶ 36} When we review a claim that a verdict is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier-of-fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the prosecution. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 387. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Although under a manifest weight standard we

---

[3] Whiting also argues that his "conviction" for violating section 1320 of the zoning resolution was against the manifest weight. But, as we have already noted, Whiting was not convicted of violating section 1320. Thus, we will not discuss Whiting's arguments relating to section 1320.

17.

consider the credibility of witnesses, we extend special deference to the trier-of-fact's credibility determinations given that it is the trier-of-fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 37} As discussed above, the record contains ample evidence of zoning violations in the form of photographs (and, to a lesser extent, Bodette's testimony) to support Whiting's conviction. After weighing the evidence and considering the credibility of the witnesses, we are not convinced that the evidence weighs heavily against Whiting's blight conviction. Nor can we say that the trial court lost its way or created a manifest miscarriage of justice by convicting Whiting of the zoning violation. We find, therefore, that Whiting's blight conviction is not against the manifest weight of the evidence. Accordingly, Whiting's third assignment of error in the zoning case is not well-taken.

### 3. Whiting is Entitled to a Hearing on the Reimbursement Order

{¶ 38} Finally, we address Whiting's first assignment of error in the zoning case, in which Whiting argues that the trial court erred by ordering him to pay restitution to the township for the costs of the clean-up without holding the hearing required by R.C.

18.

2929.28(A)(1).[4]  He also contends that any restitution order could not include the cost of township employees' labor.  The township counters that Whiting failed to preserve his objection to the restitution order because he did not object to it in the trial court, so we can only review the restitution order for plain error.  It claims that the trial court did not commit plain error because the township provided Whiting with its request for restitution, and rather than filing an objection—which would have allowed the court to hold a restitution hearing—Whiting filed this appeal, which divested the trial court of jurisdiction to hold the required hearing.  As explained further below, we agree with Whiting that the trial court should have afforded him a hearing before ordering him to reimburse the township.

{¶ 39} Financial sanctions in misdemeanor cases are governed by R.C. 2929.28(A).  The statute allows a sentencing court to impose court costs and financial sanctions including restitution to the victim of a crime, fines, and reimbursement to the government for costs it incurs in implementing the criminal sanctions that a court imposes on a defendant.  R.C. 2929.28(A)(1)-(3).  When the trial court orders a defendant to pay restitution, R.C. 2929.28(A)(1) provides for a mandatory hearing if the defendant or victim objects to the amount of restitution.  We have recognized that due process requires that a defendant be afforded notice and an opportunity to be heard regarding

---

[4] Although the trial court's sentencing entry does not identify the subsection of R.C. 2929.28(A) under which it ordered Whiting to reimburse the township, the parties characterize the order as restitution under section (A)(1).  We will analyze it as such.

restitution so that he can protect his rights and present his objections. *See Risner v. Ohio Dept. of Natural Resources, Div. of Wildlife*, 2017-Ohio-7988, 98 N.E.3d 1104 (6th Dist.) (regarding restitution to the state in an illegal-hunting case). We have also recognized that the trial court's failure to determine the amount of restitution deprives the defendant of his opportunity to object. *See City of Toledo v. Carter*, 6th Dist. Lucas No. L-15-1128, 2016-Ohio-3505 (regarding restitution that the trial court imposed without determining the amount).

{¶ 40} Here, the trial court did not determine the amount of restitution until after Whiting filed his notice of appeal, which deprived Whiting of an opportunity to object and exercise his right to a hearing. Had the trial court determined the amount of restitution before or at the sentencing hearing, Whiting could have raised his objections at the appropriate time and received the benefit of a restitution hearing before he filed this appeal. Because the trial court deprived Whiting of any meaningful opportunity to object and request a hearing, we find that the trial court erred in imposing restitution. Thus, Whiting's first assignment of error in the zoning case is well-taken.

### B. The Obstructing Case

{¶ 41} In his appeal from the obstructing case, Whiting argues that his obstructing conviction is against the manifest weight of the evidence and that the trial court erred by issuing an overly-broad remediation order. We address each argument in turn.

20.

### 1. Whiting's Obstructing Conviction is not Against the Manifest Weight of the Evidence

{¶ 42} In his first assignment of error in the obstructing case, Whiting argues that his obstructing conviction is against the manifest weight of the evidence because he did not have the intent to interfere with the clean-up crew. The township counters that the evidence supported the jury's finding of intent.

{¶ 43} To prove that Whiting obstructed official business, the township was required to show an act by Whiting that (1) was done without privilege, (2) was done with purpose to prevent, obstruct, or delay a public official's performance of any authorized act within his official capacity, and (3) hampered or impeded the public official in the performance of his lawful duties. R.C. 2921.31(A). That is, the township must show an affirmative act, done with the intent to hamper or impede, that actually hampered or impeded the performance of lawful duties by a public official. *State v. Hile*, 6th Dist. Huron No. H-16-008, 2017-Ohio-1221, ¶ 23. A defendant's intent is "gathered from the surrounding facts and circumstances * * *." (Citations omitted.) *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).

{¶ 44} The focus of obstructing official business is on the defendant's conduct and its effect on the public official's ability to perform his duties. *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 28. The statute does not criminalize every "'minor delay, annoyance, irritation or inconvenience.'" *State v. Vitantonio*, 2013-Ohio-4100, 995 N.E.2d 1291, ¶ 14 (11th Dist.), quoting *City of*

21.

*Lakewood v. Simpson*, 8th Dist. Cuyahoga No. 80383, 2002-Ohio-4086, ¶ 16.  Rather, a conviction requires "evidence that a defendant actually interfered with the performance of an official duty and made it more difficult," but does not require evidence that the defendant successfully prevented the performance of an official duty.  *Standifer* at ¶ 28. To that end, persistent "obstreperous behavior" can justify an obstructing official business conviction.  *State v. Willey*, 2015-Ohio-4572, 46 N.E.3d 1121 (5th Dist.), ¶ 22.

{¶ 45} At trial, the township presented evidence that Whiting was in court when the trial court ordered him to remedy the zoning violations on his property and when the court granted the township permission to clean up the property because Whiting had not. The township also offered into evidence a copy of the trial court's journal, which contained separate entries noting that the court ordered Whiting to "remediate the property" and that Whiting did not remediate the property.  Additionally, the November 30, 2016 journal entry stated that "[t]he township is authorized to remediate the property. The defendant is ordered not to interfere with the township while remediating the property."

{¶ 46} When the officers arrived on the day of the clean-up, they explained to Whiting that they had a court order, workers were coming to clean up the property, and he was not to interfere with the workers.  Once the clean-up began, Chief Kaiser repeatedly instructed Whiting to let the workers do their jobs, to stop talking to the workers, and to stop trying to retrieve items from the yard and township vehicles; Whiting persisted with these actions despite Chief Kaiser's warnings.  Chief Kaiser

22.

testified that Whiting's actions "interfered" with the clean-up process and Chief Kaiser and Wilbarger both testified that Whiting's actions "delayed" the process. Whiting claimed that he was not trying to retrieve items from the yard to stall the workers' progress, but did so to preserve items of personal significance to him.

{¶ 47} Considering the facts and circumstances surrounding Whiting's actions during the clean-up work, we conclude that Whiting intended to either prevent the workers from remediating the property or delay the workers' completion of the remediation work. Whiting knew of the trial court's November 15 order that he was to remedy the zoning violations by November 30, which gave him more than two weeks to properly store boats and vehicles and remove significant items from his yard. But he did not do so. Instead, Whiting waited until the workers were at his house before trying to rescue property that was important to him. He took items that had been removed from the yard out of vehicles and from workers. He also pestered workers while they were trying to complete the court-sanctioned clean-up of the property. On the whole, we find that Whiting's actions "interfered with the performance of an official duty"—in this case, the clean-up of Whiting's property—"and made it more difficult," *Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, at ¶ 28, which supports Whiting's obstructing official business conviction.

{¶ 48} Although he did not argue it in this assignment of error, in his second assignment of error in the obstructing case, Whiting takes issue with the scope of the township's clean-up efforts. To the extent that Whiting is arguing that the township

23.

employees were not performing an "authorized act" or in the course of their "lawful duties," we find his argument unavailing.

{¶ 49} Absent bad faith by an official, a defendant cannot obstruct the official in the discharge of his duties, whether or not the official's actions are lawful under the circumstances. *See State v. Lewis*, 2d Dist. Montgomery No. 27152, 2017-Ohio-1195, ¶ 12, citing *State v. Pembaur*, 9 Ohio St.3d 136, 138, 459 N.E.2d 217 (1984); *State v. Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶ 19; and *State v. Stevens*, 5th Dist. Morgan No. 07-CA-0004, 2008-Ohio-6027, ¶ 37. There is no evidence in the record that the township workers were acting in bad faith when they went to Whiting's property. Instead, the evidence shows that the workers had a court order authorizing them to remediate the property and that they acted within the bounds of their presumed authority. Without evidence of bad faith, we cannot say that the workers were engaged in an unauthorized act or acting outside of their lawful duties, either of which would make Whiting's behavior annoying, but not criminal.

{¶ 50} After weighing the evidence and considering the credibility of the witnesses, we are not convinced that the evidence weighs heavily against Whiting's obstructing official business conviction. Nor can we say that the jury lost its way or created a manifest miscarriage of justice by convicting Whiting of obstructing official business. We find, therefore, that Whiting's conviction in the obstructing case is not against the manifest weight of the evidence. Accordingly, Whiting's first assignment of error in the obstructing case is not well-taken.

24.

## 2. Whiting's Actions were not Privileged

**{¶ 51}** Finally, in his second assignment of error in the obstructing case, Whiting argues that the trial court abused its discretion by ordering the clean-up of Whiting's real property to include the removal of all personal property located outside Whiting's home. Specifically, Whiting objects to the removal of "personal property that was functional, licensed and propertly [sic] registered * * *," including a vehicle, boats, trailers, ATVs, motorcycles, a jet ski, a snowmobile, and a cement mixer.

**{¶ 52}** But, as the township points out, the trial court's order did not name specific items to be removed. The trial court simply stated that "[t]he township is authorized to remediate the property." It appears that Whiting is really arguing that the workers exceeded the scope of the trial court's order when they removed "functional" vehicles and personal property. And, as best we can determine, Whiting has asserted this argument within the context of the obstructing case in an attempt to justify his actions during the clean-up process. That is, Whiting is arguing that his actions were somehow privileged because the township workers were in the process of removing personal property that did not constitute "dirt or pollution" and, therefore, they were exceeding the scope of their authority when he interfered with them. We disagree.

**{¶ 53}** In the context of obstructing official business, "[t]he privilege element 'refers to a positive grant of authority entitling one to deliberately obstruct or interfere with [an official] performing his lawful duty.'" *State v. Body*, 2d Dist. Montgomery No. 27732, 2018-Ohio-3395, ¶ 29, quoting *State v. Stayton*, 126 Ohio App.3d 158, 163, 709

25.

N.E.2d 1224 (1st Dist.1998). Privilege is an affirmative defense, which requires the defendant to establish by a preponderance of the evidence that his actions were privileged. *State v. Albright*, 7th Dist. Mahoning No. 14 MA 0165, 2016-Ohio-7037, ¶ 48, fn. 3.

{¶ 54} Whiting did not raise this affirmative defense at trial. Whiting failed to establish, or even argue, that he had "a positive grant of authority" that entitled him to deliberately interfere with or delay the clean-up efforts on his property. Moreover, as we noted above, absent a showing of bad faith, Whiting's subjective perception of the lawfulness (or unlawfulness) of the public officials' actions did not give him the privilege to hamper the clean-up efforts. *See Lewis*, 2d Dist. Montgomery No. 27152, 2017-Ohio-1195, at ¶ 12.

{¶ 55} We therefore find that this assignment of error is not well-taken.

### III. Conclusion

{¶ 56} The July 13, 2017 judgment of the Toledo Municipal Court is affirmed. The September 7, 2017 judgment of the Toledo Municipal Court is affirmed, in part, and reversed, in part. Whiting's convictions for violating the Washington Township Zoning Resolution are affirmed. However, because the trial court deprived Whiting of an opportunity to object to its order that Whiting reimburse the township for the costs of the clean-up, we vacate that portion of the September 7 sentencing entry and remand the case

to the trial court to allow Whiting to dispute the amount of restitution, and for an evidentiary hearing on restitution as required by R.C. 2929.28(A)(1). The parties are ordered to divide the costs of this appeal equally pursuant to App.R. 24.

Judgments affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Thomas J. Osowik, J. _____

Christine E. Mayle, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.