[Cite as *State v. Hawkins*, 2024-Ohio-4516.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                              Court of Appeals No.  L-22-1286

    Appellee                                              Trial Court No. CRB-21-08223

v.

Anita Laurice Hawkins                              **DECISION AND JUDGMENT**

    Appellant                                             Decided:  September 13, 2024

* * * * *

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Adam H. Houser, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a bench trial, defendant-appellant, Anita Hawkins, appeals the

September 18, 2023 judgment of the Toledo Municipal Court, convicting her of

obstructing official business and resisting arrest.  For the following reasons, we affirm the

trial court judgment.

## I. Background

{¶ 2} Defendant-appellant, Anita Hawkins, was charged with (1) interference with custody, a violation of R.C. 2919.231, a first-degree misdemeanor; (2) obstructing official business, a violation of R.C. 2921.31(A), a second-degree misdemeanor; and (3) resisting arrest, a violation of R.C. 2921.33(A), a second-degree misdemeanor. Following a bench trial, Hawkins was acquitted of interference with custody, but was convicted of obstructing official business and resisting arrest.

{¶ 3} At trial, the city presented testimony from Nona Mason, an intake investigator for Lucas County Children's Services, and Toledo Police Officers Derek Adams and Colin O'Rourke. It also admitted a recording from the body camera worn by Officer Adams.

{¶ 4} According to that evidence, on September 15, 2021, Mason went to Hawkins's home to serve an ex parte order requiring the removal of Hawkins's children from her home. Mason was accompanied by Officers Adams and O'Rourke, along with their sergeant. They knocked on the door. When Hawkins answered, Officer Adams informed her that they were there "with CSB" and had an ex parte order to take the children. Hawkins told the officers "no," and said "it's not going to happen." She tried to shut the door, but Officer Adams opened the storm door and prevented her from closing the main door.

{¶ 5} Once inside, Hawkins backed into the house and told the officers they had no right to be there. Sergeant Williams (whose voice O'Rourke identified in the

2.

recording) explained that they had an order to take the children.  He told her that she could either give them the kids or she would be arrested and they would take the kids anyway.  He asked her if she was going to let them take the kids or whether they had to arrest her.  She said they'd have to kill her.  Hawkins turned from them and one of the officers grabbed her arm to apprehend her.  She struggled and tried to evade them, and Officer Adams's body camera was knocked off in the struggle.  The officers were eventually able to handcuff her.  They removed her from the house and placed her in the patrol vehicle.

{¶ 6} Officer Adams conceded on cross-examination that they did not try to explain to Hawkins what an "ex parte order" is, but he denied that Hawkins was simply trying to shield the kids from the officers.  Officer O'Rourke admitted that Hawkins did not close and lock the door; he said that she attempted to close it, but Officer Adams stepped in before she got the door fully closed.

{¶ 7} The trial court granted Hawkins's Crim.R. 29 motion to dismiss the charge of interference with custody.  It found her guilty of the remaining charges.  It imposed a suspended jail term of 90 days and a one-year period of inactive probation, requiring good behavior and compliance with LCCS case plan services.

{¶ 8} Hawkins appealed.  She assigns the following errors for our review:

1.  The Trial Court's Decision was against the Manifest Weight of
    Evidence to Convict Defendant of Obstructing Official Business as she
    Did not Obstruct the Police in Their Official Capacity.

3.

2. It was against the Manifest Weight of Evidence to convict Appellant of Resisting Arrest as She Did not Resist arrest and her Arrest was Unlawful.

## II. Law and Analysis

{¶ 9} Hawkins argues that both her obstructing and resisting arrest convictions are against the manifest weight of the evidence. When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 2012-Ohio-6068, ¶ 15 (6th Dist.), citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 10} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the fact-finder's credibility determinations given that it is the finder of fact who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their

4.

voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.).

## A. Obstructing Official Business

{¶ 11} Hawkins argues that her conviction of obstructing official business was against the manifest weight of the evidence because the city failed to prove a "substantial stoppage" of the officers' progress. She maintains that she did not prevent police from entering her home, she did not shield or grab her children, it took only 30 seconds for police to arrest and handcuff her, and the entire interaction took approximately two minutes. The city responds that Hawkins acted with the purpose to delay police when she told them "you'll have to kill me," and by attempting to slam the door on the officers. It emphasizes that the trial court was able to view the body camera footage of the incident.

{¶ 12} Under R.C. 2921.31(A) "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." A conviction under R.C. 2921.31(A) requires the state to prove five elements: "(1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege." (Internal citations and quotations omitted.) *State v. Pelmear,* 2022-Ohio-1534, ¶ 47 (6th Dist.).

5.

{¶ 13} To prove the "hampered or impeded" element of the offense, Ohio courts generally require that there be "some substantial stoppage of the officer's progress" *Id.* at ¶ 48, quoting *State v. Wellman*, 2007-Ohio-2953, ¶ 17 (1st Dist.), quoting *State v. Stephens*, 57 Ohio App.2d 229, 230, (1st Dist.1978). Hawkins maintains that the city failed to prove this element because she did not prevent police from entering her home, she was handcuffed within 30 seconds, and the entire interaction took approximately two minutes.

{¶ 14} R.C. 2921.31(A) does not criminalize every "minor delay, annoyance, irritation or inconvenience," and actual interference with the performance of an official duty must be proven *Id.* at ¶ 48. However, "substantial stoppage" "is not defined by any particular period time[.]'" *State v. Grice*, 2009-Ohio-372, ¶ 12 (1st Dist.), citing *Wellman* at ¶ 18, citing *State v. Dunn*, 1980 WL 352885 (1st Dist. Mar. 26, 1980). Minutes or even seconds may suffice. *Wellman* at ¶ 18. Moreover, the state need not show that the defendant successfully prevented the performance of that duty. *State v. Whiting*, 2019-Ohio-56, ¶ 44 (6th Dist.), quoting *State v. Standifer*, 2012-Ohio-3132, ¶ 28 (12th Dist.).

{¶ 15} In *State v. Kehres*, 2020-Ohio-1320, ¶ 19-22 (11th Dist.), officers sought to arrest the defendant's boyfriend on outstanding warrants. Officers knocked on the door for nine minutes, then kicked in the front door. Upon entering, they stepped into a small vestibule where a second door led into the main part of the home. The second door did not have a knob. It was secured solely by a deadbolt lock that could be opened only from

6.

the inside. The officers pounded on the second door and announced the reason they were there. After a few minutes, the defendant came to the door. When they asked her to open the second door, she stuck one of her fingers through the hole where the doorknob should have been and motioned as if she was trying to open the door. She did this several times for a few minutes, but ultimately told officer that she could not open the door. Officers used a crow bar to open the door. The defendant claimed that she did not know where her boyfriend was, but officers found him hiding in a closet.

{¶ 16} The defendant was convicted of obstructing official business. On appeal, the court acknowledged that refusing to answer the door or obey an officer's request cannot form the basis of a conviction for obstructing official business. However, it found that when the defendant stuck her finger through the hole and tried to pull on the door, the defendant "was engaging in a ruse designed to delay the officers' entry," thereby "delay[ing] their entry by a few minutes." The court found that this sufficed to support the defendant's conviction. *Id.* at ¶ 22.

{¶ 17} In *State v. Dunn*, 2006-Ohio-6550 (4th Dist.), the defendant was arrested for operating a vehicle while under the influence of alcohol and placed in the back of a patrol vehicle. There were children in the vehicle and officers were tending to the children and to the vehicle. An officer heard a thumping sound coming from the cruiser and saw that the defendant was slamming his head and shoulder up against the back window of the car trying to force the door open. He opened the door and told the defendant to calm down and relax and stop slamming himself against the door. The

7.

defendant wedged his knee in the door of the cruiser, blocking it from being shut. The officer told him to put his foot back in the cruiser, and another officer told him that if he failed to do so, he would be charged with additional violations. The defendant continued to refuse to put his leg back in the car. He was then warned that a taser would be used if he failed to put his leg back in the car. One officer opened the opposite door, got in the car, and held his taser up to the defendant while the other officer lifted the defendant's leg enough to force it into the cruiser and shut the door. The defendant was charged and convicted of obstructing official business.

{¶ 18} On appeal, the appellate court affirmed. It observed that the defendant purposely placed his knee in the way to prevent the officer from closing the door and carrying out his business. It found that it was firmly established that the defendant purposely acted to hamper or impede law enforcement officials in the performance of their lawful duties.

{¶ 19} In *State v. Holmes*, 2005-Ohio-1632 (9th Dist.), officers responded to a loud-noise complaint at a residence. When they arrived, they knocked at the door. The defendant answered and a brief conversation ensued through the partially-opened doorway. The defendant then tried to close the door, but one of the officers placed his foot in the doorway, blocking it. In response, the defendant trapped the officer's leg in the door. Other officers pushed the door open, entered the home, and forcibly arrested the defendant. The defendant was charged and convicted of obstructing official business.

8.

On appeal, he argued that his conviction was against the manifest weight of the evidence. The appellate court disagreed and affirmed.

{¶ 20} Finally, in *State v. Easterling*, 2019-Ohio-2470 (2d Dist.), officers were investigating an allegation of domestic violence. The defendant came out onto the porch, about ten feet from the front door. An officer told him he needed to talk to him and told him not to go back in the house. The defendant disregarded this instruction. An officer went to the front door and grabbed it. As he did, the defendant slammed it closed and forcibly held it closed while the officer tried to push his way in. Officers succeeded in getting inside and arrested the defendant after briefly struggling with him. The defendant was charged and convicted of obstructing official business.

{¶ 21} On appeal, the court recognized that some "appellate districts have concluded that a defendant's act of retreating into his or her home, contrary to an officer's instructions, can constitute obstructing official business," but generally, a mere refusal to respond to an officer's request cannot. *Id.* at ¶ 36, 39. It found, however, that the defendant "did not merely refuse to cooperate; he engaged in the affirmative conduct of disobeying the officer's order to stop and not return to the house, entering his home, and pushing against the door to prevent the officers from apprehending him." *Id.* at ¶ 40. The court acknowledged that the defendant's actions caused a delay of only about 90 seconds, but it nevertheless concluded that this did not require reversal of his conviction.

9.

**{¶ 22}** Here, the trial court explained the reason for its decision on the charge of obstructing:

> As to the charge of obstructing, Court heard testimony from Officer Adams and Officer O'Rourke and was able to view the body cam footage. It is clear from their testimony, as well as from the footage, that when they indicated they knocked, announced their presence, announced their purpose there, which was that they had an ex parte order and they were there to retrieve the children, the defendant told them, no, that wasn't happening and began to shut the door. It was clear from the video, and I believe it was Mr. Adams that was first in, had to quickly kick or push the door in order to have it not be shut completely. And then from then on she was resisting and not cooperating. Even though slight and delayed their performance of their duties by only a few minutes, it is enough. Any delay in their performance is enough. And so I have made a finding, based on the testimony as well as viewing of the video, that the defendant did, in fact, obstruct official business when she did not cooperate with the officers when she backed into the home and she attempted to slam the door. By her verbal conduct as well as her physical conduct.

**{¶ 23}** "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *Wellman,* 2007-Ohio-2953, at ¶ 12 (1st Dist.). Here, the officers told Hawkins that they were there to serve the ex parte order, she told them no, she tried to close the door to prevent them from serving the order, and she specifically told them she would not willingly hand the children over and that they would have to kill her to get them. This conduct was recorded on body camera, and we have reviewed the recording. Although the officers were only briefly delayed in executing the ex parte order, Hawkins clearly communicated that she intended to impede them in performing their duty and she took action to prevent them from doing so. The trial court's resolution of evidentiary conflicts did not create such a manifest miscarriage of

10.

justice that Hawkins's conviction must be reversed and a new trial ordered. Hawkins's conviction is not against the manifest weight of the evidence.

{¶ 24} We find Hawkins's first assignment of error not well-taken.

## B. Resisting Arrest

{¶ 25} Hawkins argues that her conviction of resisting arrest was against the manifest weight of the evidence because she was acquitted of interference with custody and her arrest for obstructing official business was not lawful. She explains that she became upset because officers did not tell her what an "ex parte order" is, and she was manhandled by police. She insists that there was no probable cause to arrest her because she did not bar the police from entering the home or removing her children, she did not threaten police, her interaction with the police lasted less than two minutes, and she was promptly arrested. She denies that she moved away from the police "in any forceable way." The city responds that after being told she was being arrested, Hawkins struggled with police, causing the officer's body camera to fall off.

{¶ 26} The trial court explained the reason for finding Hawkins guilty of resisting arrest:

> [With respect to] resisting arrest[,] [s]he was told she was going to be placed under arrest, and it's clear from the video footage that she pushed back, resisted, and that at least two—I don't know, the camera falls off— one, possibly two, had to struggle with her for quite some time in front of the children to effectuate the arrest and even to help her stand up. So I do find the State has met its burden as to the resisting and I have made a finding of guilty.

11.

{¶ 27} Under R.C. 2921.33(A), "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Although she explains the rationale for her conduct, Hawkins does not deny that she struggled with the officers as they attempted to arrest her. Rather, her challenge to the conviction for resisting arrest is primarily premised on her claim that she was acquitted of interference with custody, and her arrest for obstructing was not lawful.

{¶ 28} "Ohio courts have also consistently held that an arrest is lawful if the officer had probable cause to believe that a crime was committed by the defendant, even if the defendant is ultimately found not guilty of the crime." (Citations omitted.) *State v. Barker*, 128 Ohio App.3d 233, 240, (6th Dist. 1998). And, in any event, we have already determined that Hawkins's arrest for obstructing was lawful and her conviction was not against the manifest weight of the evidence.

{¶ 29} Here, the officers told Hawkins they were arresting her, and she struggled with them in an effort to break free, knocking off one of the officer's body cameras in the process. We find no miscarriage of justice in the trial court's resolution of evidentiary conflicts. Hawkins's conviction is not against the manifest weight of the evidence.

{¶ 30} We find Hawkins's second assignment of error not well-taken.

### III. Conclusion

{¶ 31} Hawkins's conviction for obstructing official business is not against the manifest weight of the evidence. Hawkins attempted to close the door on officers who announced that they were there to retrieve her children in accordance with an ex parte

12.

order from children's services, and she declared that she would not cooperate and that officers would have to kill her. We find her first assignment of error not well-taken.

{¶ 32} Hawkins's conviction for resisting arrest is not against the manifest weight of the evidence. Officers told her that they were arresting her, and she struggled to try to break free from them as they attempted to arrest her, knocking off an officer's body camera during the struggle. We find her second assignment of error not well-taken.

{¶ 33} We affirm the September 18, 2023 judgment of the Toledo Municipal Court. Hawkins is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                 _____

                                                     JUDGE

Gene A. Zmuda, J.             

_____

Myron C. Duhart, J.                                                              JUDGE
CONCUR.

_____
                                                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.